Hillsborough, }
Mar. 6, 1945. } No. 3516.

VINCENT GATTO <em>v.</em> ADELARD N. CLOUTIER <em>& a.</em>

*Chretien & Craig (Mr. Chretien* orally), for the plaintiff.

*Alvin A. Lucier* (by brief and orally), for the defendants.

MARBLE, C. J. So far as applicable to the present case, section 5 of chapter 106 of the Revised Laws provides that every vehicle on any public highway, whether stationary or in motion, "shall have attached to it a light or lights, which shall be so displayed as to be visible from the front and rear, during the period from one-half hour after sunset to one-half hour before sunrise." Causal violation of this statute constitutes a legal fault. *Eastman* v. *Herrick*, 87 N. H. 58; *Frost* v. *Stevens*, 88 N. H. 164, 167.

Section 9 of chapter 106 prescribes a penalty for a violation of section 5, and section 10 provides that the driver or custodian of the

unlighted vehicle shall be deemed the responsible party, liable to such penalty.  In view of this last-named section it is at least questionable if the defendants could be held responsible to the plaintiff for the failure of either Plantier or Labrie to attach a light to the wagon.  We need not decide that question, however, for we believe that the evidence is entirely insufficient to establish the fact that the absence of a light on the wagon in question was the cause of the plaintiff's injury.

The plaintiff testified that, although it was raining hard that morning, he could see ahead of him on the road for a distance of thirty or forty feet and that the light on the front fender of his bicycle threw a direct beam that distance and was properly adjusted to reveal objects in his path.  Subject to the defendants' exception, an expert on bicycle lights testified that the light threw a diffused beam and for a much shorter distance.  However, this testimony, if true, does not affect our ultimate conclusion.

Hanover Street ran "down a hill" toward Elm Street, and the plaintiff was coasting.  Although he answered affirmatively the question, "Did you at all times on your way there pay attention to the road ahead?"  his detailed description of his conduct is not in strict accord with this answer.  He testified: "I was going from east to west on Hanover Street, and as I approached Wilson Street, I looked to my left and didn't see any traffic and I continued along down and looked for traffic at Ashland Street, and there wasn't anything there.  Then I looked straight ahead, and this milk wagon was in my way and I swerved to the left to avoid it but I didn't see it in time."

His testimony with respect to the electric street lamp is as follows: "Q. Was the street light lighted the night you ran into the rear of this milk wagon?  A. Yes, sir.  Q. It was a pretty good, bright light, was it?  A. Yes. . . . Q. As you would go from your home to your place of work early in the morning for some months, you did have occasion to notice the street lights at the intersections along Hanover Street?  A. Yes.  Q. And they were all nice, bright lights, weren't they?  A. Yes.  Q. And this one — the night you had the accident — that was lighted, and it was good and bright, wasn't it? A. Yes."

According to the plaintiff's testimony, the back end of the milk wagon was "five or six feet east of the west curb of Ashland Street." It must have been visible in the rays of the street lamp, which was located "five feet east of the curb line on the east side of Ashland

Street," and if, despite its visibility, the plaintiff did not see the wagon in time to avoid the accident, it is, in our opinion, a matter of sheer conjecture whether he would have seen it sooner if the statutory requirement had been observed. *Collette* v. *Railroad*, 83 N. H. 210, 215.

There is no evidence concerning the effectiveness on a rainy night of such a light as the driver of a horse-drawn vehicle would reasonably be required to display. See *Eastman* v. *Herrick*, 87 N. H. 58, 60, 61. Moreover, during most of the ninety feet which intervened between Wilson and Ashland Streets the plaintiff was looking to his right. When he finally looked straight ahead, it was too late to avert a collision.

The suggestions already made apply equally to the plaintiff's contention that the failure to maintain a wagon light could be found to constitute actionable negligence.

The only other specific claim of fault is that Labrie did not drive farther to the right and occupy the narrow strip of tarvia which bordered the cement lane. Counsel argue that if this had been done the accident would not have happened, since the bicycle struck the wagon close to the left rear wheel. As we view the evidence, such extreme precaution was not demanded. Labrie halted his team only for the short time it required for Plantier to leave a bottle of milk at each of two apartments in the house on the opposite corner and then cross the street to the place where Labrie was waiting. The wagon was standing on the right-hand side of the traveled part of the road and near a bright electric street light. It was half past two in the morning when little traffic was to be expected. On these facts the jury could not reasonably find that Labrie in stopping where he did was not in the exercise of ordinary care.

The conclusion we have reached makes it unnecessary to consider the contention of defendants' counsel that Plantier was not, so far as the evidence discloses, a servant of the defendants, or, if he was, that he had no authority to delegate to Labrie the performance of his duty as driver.

*Judgment for the defendants.*

All concurred.